# 𝒜



September 4, 2025

The Honorable Stephanie A. Gallagher
United States District Judge
c/o Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201

Dear Judge Gallagher,

I am Mark Robert Unkenholz' spouse, and am writing you on his behalf. We have been partners for over 35 years, having met at NSA early in our careers. Together, we have more than 70 combined years of experience as cryptographic researchers. Besides being the kindest, most empathetic person I know, Mark is also a firm believer in following the rules. He would never have intentionally broken any laws, but with the help of his lawyers has come to believe that he may have sent something he should not, even if he (and his lawyers) don't know what this was.

A firm belief in following the rules implies trust and belief that those in authority will also do what is right. Mark's arrest and indictment occurred on the same day, 31 March 2022, without warning or any pre-arrest interviews. Even the arrest interview was cut short – as soon as Mark mentioned the official NSA contracts the emails in the warrant were for. Mark believed there must have been some mistake and that NSA would fix it. They did not.

He trusted his lawyers to believe him when he said this was a part of his normal work. It took them nine months (January 2023) to be convinced and finally request the unclassified contracts, documents, and policies covering these work emails. Another seven months passed (August 2023) before the Justice Department provided the requested documents. What should have been unearthed in the original investigation took 17 months after the arrest to be handed to the defense.

At this point Mark believed that the Justice Department would understand that there had been a mistake, that the investigation had been rushed and

1

$\mathcal{A}$

---

missed critical evidence, and that the Justice Department would do the right thing and drop the case. They did not. While they admitted that no espionage had occurred, that all the emails were legitimate work, they now claimed that he had (in their words to his lawyer) 'overshared' and was 'reckless.'

Mark's office at NSA was the Commercial Engagement Center. That department's job is to communicate and collaborate with companies to assist in our national security. Since his arrest and indictment many of his coworkers have expressed worry and concern about being arrested for doing this same job. For a few it was too much, and they left the office. I've been informed that some of his old colleagues were told by NSA security that they could not support Mark by attending his plea hearing, or writing letters of support.

While cases involving classified material are often long, the length of this was extended by several extenuating circumstances beyond Mark's control. First was the botched original investigation, missing the critical fact that all of the emails in the indictment were official work emails. They were sent using methods outlined in CEC policy. About half these emails were sent to the lead investigator on a contract held by the office. The remaining emails were sent during official contract negotiations to that same lead investigator after she had moved to a new company. It took five months for the defense to believe Mark, and another year after that for the Justice Department to give this exculpatory evidence to the defense. Only five months after the release of these documents, Marks lawyer was reassigned within the Judicial. Another year passed before his new lawyer was even cleared to look at the evidence.

Over three and a half years of being indicted has taken its toll on Mark. One example of the visible harm the added stress has caused is the loss of more than half his sight in one eye (eye stroke). After this lengthy time, Mark was broken and he just wanted it to be over, even if it meant potentially losing his new job: volunteering with the Red Cross as a dispatch operator and teaching 'International Humanitarian Law'. Felons are not allowed to be Red Cross volunteers, even if they've won the Presidential Volunteer Service Award (2024).

When Mark accepted the plea, his lawyers asked that Justice first interview and show them his proffer letter to two notable people in his office concerning the nature and classification what he was being charged with. The prosecutors responded that this was reasonable, but instead quickly scheduled the

$$\mathcal{A}$$

---

plea hearing with a 'take-it-or-leave-it' threat.

I believed now as I did then that he should have rejected this plea as he has done nothing but serve his country loyally for almost 40 years. I (and others who know the type of work Mark did) believe that the case itself has harmed national security, brutally damaging morale in the Commercial Engagement Center. Not only have I heard this from his colleagues on the inside, but have seen it outside. In my work for a private company, visits from the CEC are less frequent and their interactions minimal. The problems that led to this have not been identified or fixed, and could plague the system in the future. These problems will never be identified or solved with this plea.

Sincerely

Anna M. Johnston