

Hon. F. Scott Kieff

September 21, 2025

The Honorable Stephanie A. Gallagher
United States District Judge
c/o Office of the Federal Public Defender 100 South Charles Street,
Tower II, 9th Floor Baltimore, Maryland 21201

RE:     Mark Unkenholz Sentencing

Dear Judge Gallagher:

I understand from his counsel, Mr. James Wyda from the Office of the Federal Public Defender, that Mr. Mark Unkenholz (Mark) has recently pled guilty to a violation of 18 U.S.C. § 1924, and that Your Honor will be considering letters such as this one during sentencing.  I am writing in support of Mark and hope that my letter is of assistance to the Court.

I offer this submission in my individual capacity.  All ideas offered here are not attributable to any of my past, present, or future host organizations or affiliations; and they take no position on any particular pending or proposed legislative or other governmental actions, other than to support Mark in his upcoming sentencing before the Court.

I got to know Mark in September of 2003 when we both arrived for one-year visiting fellowships at Stanford University's Hoover Institution.  At the time, I was an Associate Professor of Law at Washington University in St. Louis, in the role at Hoover as a National Fellow; and Mark was an employee of the National Security Agency (NSA) in the role at Hoover as a National Security Affairs Fellow.  The classes of National Fellows and National Security Affairs were both small, about 7-10 in each, and we all were encouraged to exchange ideas with each other as we worked on our own research projects.  Many of us still keep in touch with each other two decades later.  It so happened that my work was of interest to Mark and his NSA colleagues, and it was through Mark's introduction that I came to begin working for about 15 years as a part-time Special Government Employee (SGE) in the Senior Executive Service (SES) at NSA, often interacting throughout those 15 years with Mark and his day-to-day colleagues at NSA.  Throughout most of the same time period, except when required for government ethics reasons to step away while I was serving full-time as a Commissioner at the U.S. International Trade Commission, I have maintained close working relationships with colleagues at Hoover, where I currently am a Visting Fellow.

Throughout the time that I have known Mark, across all of my many interactions with him, he has consistently conducted himself with the utmost professionalism and steadfast loyalty to NSA and our Nation, to his assigned mission and teammates, demonstrating the strongest character.   Even when in the face of immense stress, with the highest of stakes on the line, I consistently saw Mark work hard to stay within the boundaries of established law.  I regularly observed him applying high level professional excellence, including purposeful adherence to law, authority, and morality.  I have always seen Mark act with deliberative, thoughtful, and careful professionalism, showing respect for both the rules and the

people around him.  Furthermore, all feedback I ever received about Mark from colleagues in and around the communities at Hoover and NSA was entirely consistent with this view of Mark.

It is important to recognize the seriousness of these proceedings and their present posture, including that Mark has entered a plea.  To get that far is, itself, a severe price to be paid for a public servant like Mark, who spent a life of service in our intelligence community.  To get that far is also a powerful reflection of deep respect and appreciation for the vital roles served by the Court and the executive branch prosecutors in protecting the Nation and enforcing our laws.

But to go further by imposing a tougher sentence would not do good for the system and could do harm to the system, including to the parts of the executive branch operating within the intelligence community. The nature of the work Mark accepted assignments to do inherently involves the taking of so many concrete steps that involve legal risk, for which the nature and degree of specific internal communications would likely make all the difference.  Yet complex and often tense interactions, especially at mission speed, inherently lend themselves to miscommunication or misinterpretation, and also must leave room for reasonable professional judgements to differ, so long as well grounded.  Which is why protecting mission requires that the application of rules, and their enforcement characteristics, remain mindful about the risks of under-inclusiveness, or under-enforcement, as well as the risk of over-inclusiveness, or over-enforcement.  Attention to both sides of those risks is what enables ongoing mission to be conducted at mission speed, to help the executive branch protect the Nation.

Respectfully,

*F. Scott Kieff*

Hon. F. Scott Kieff  
Stevenson Bernard Professor  
George Washington University Law School  
Former Commissioner  
U.S. International Trade Commission